UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VALLEY EYE PHYSICIANS AND SURGEONS P.C. and GISELA VELEZ M.D., LLC, <br><br> Plaintiffs <br><br> v. <br><br> MODERNIZING MEDICINE BILLING SERVICES, LLC, <br><br> Defendant. | Civil Action No. 25-cv-10774-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                             **July 18, 2025**

**I.    Introduction**

Plaintiffs Valley Eye Physicians and Surgeons P.C. and Gisela Velez (collectively, "Valley Eye") have filed this lawsuit against Defendant Modernizing Medicine Billing Services, LLC ("ModMed") alleging fraud in the inducement/misrepresentation (Count I), breach of fiduciary duty (Count II), violation of Mass. Gen. L. c. 93A ("Chapter 93A") (Count III), interference with advantageous relationship (Count IV), negligence (Count V), as well as seeking a declaratory judgment that the contract at issue is void (Count VI). D. 1-1. ModMed has now moved to dismiss the lawsuit for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). D. 8. For the reasons stated below, the Court ALLOWS the motion to dismiss. Id.

**II.    Standards of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

1

for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

## III.    Factual Background

The following facts are drawn from Valley Eye's complaint, D. 1-1, and attached exhibits, and are accepted as true for purposes of resolving ModMed's motion to dismiss.

ModMed is a business that provides billing services to medical practices. D. 1-1 ¶ 6. Generally, ModMed's clients are doctors who provides medical services who must submit claims to third-party insurance company payors. Id. ModMed's clients would submit all necessary information to it which then submits their billings to the appropriate insurance companies or other payors responsible for paying the medical services. Id. Most insurers and other third-party payors have "timely filing" requirements for submission of medical billings and will not pay bills that are not submitted within the required timeframe. Id. ¶ 7. As alleged, ModMed specifically represented to Valley Eye during contract negotiations that it had sufficient staffing and expertise to comply with all third-party payor requirements and that Valley Eye could entrust 100% of their billings to ModMed for submission and collection. Id. ¶ 9. ModMed further represented to Valley Eye that it had sufficient staffing and oversight, sufficient knowledge of all timely filing

requirements, extensive expertise in medical billing and sufficient knowledge of Valley Eye's medical practices to timely process and collect their accounts. Id. ¶ 10. As alleged, ModMed was aware during contract discussions that Valley Eye's billing person had left its employ and was aware that Valley Eye was in "dire need of billing support." Id.

On or about February 28, 2022, Valley Eye entered into an agreement with ModMed (the "Boost Contract"). Id. ¶ 13. The Boost Contract requires Valley Eye to submit 100% of their patient billings to ModMed and makes ModMed the sole and exclusive billing service of Valley Eye for one year. Id. ¶¶ 15-16. ModMed commenced its services on April 25, 2022. Id. ¶ 24. As alleged, ModMed repeatedly failed to submit invoices to third party payors in accordance with the timely filing requirements. Id. ¶ 27. Although Valley Eye was able to obtain filing extensions from several third-party payors, ModMed allegedly still failed to submit billings prior to the expiration of the extended deadlines, including over $1,300,000 in submissions. Id. ¶ 28. ModMed allegedly further (i) failed to follow up on rejected invoices and (ii) failed to tell Valley Eye about the rejections. Id. ¶ 29. As a result, Valley Eye did not know that the invoices were rejected until after the time for re-filing had expired. Id. Further, ModMed did not inform Valley Eye about "practice held" billings (i.e. those billings that were held aside for further information) and, as a result, Valley Eye could not make necessary corrections for timely submissions. Id. ¶ 30. Consequently, Valley Eye's collections in 2022 allegedly averaged only $600,000 per month, or $7.2 million annually, on billings of nearly $2 million per month, or $24 million per year. Id. ¶ 26. Additionally, when ModMed failed to collect payments from insurers, it often sent large invoices directly to patients even though their claims were already covered by insurance. Id. ¶ 31. As a result, many of Valley Eye's patients gave dissatisfied reviews of its practice or left its practice. Id.

## IV. Procedural History

Valley Eye initially filed this action in the Middlesex Superior Court on February 26, 2025. D. 1-1. On April 1, 2025, ModMed removed the case to this Court. D. 1. ModMed now has moved to dismiss the case for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). D. 8. The Court heard the parties and took the matter under advisement. D. 21.

## V. Discussion

### A. Count I: Fraud in the Inducement

Under Massachusetts law, "[f]raud in the inducement 'concern[s] the validity of the formation of the contract[.]'" In re Rowley Solar LLC, 650 B.R. 742, 753 (B.A.P. 1st Cir. 2023) (some alterations added) (quoting Berwind Prop. Grp. Inc. v. Envtl. Mgmt. Grp., Inc., No. 04-cv-11411-NMG, 2007 WL 4707647, at *3 (D. Mass. Feb 5, 2007)). The tort occurs "when a misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved." Suliveres v. Commonwealth, 449 Mass. 112, 117 (2007) (quoting Black's Law Dictionary 686 (8th ed. 2004)). To plead fraud in the inducement, "a plaintiff must [allege plausibly] '1) that the defendant made a false representation of material fact, 2) with knowledge of its falsity, 3) with the purpose of inducing the plaintiff to act thereon and 4) that the plaintiff relied upon the representation to his detriment.'" Griffin v. Coghill, No. 17-cv-11619-IT, 2018 WL 1122361, at *7 (D. Mass. Mar. 1, 2018) (quoting Berwind Prop. Grp. Inc., 2007 WL 4707647, at *3).

#### 1. Failure to Satisfy Rule 9(b) Pleading

Under the Fed. R. Civ. P. 9(b), fraud claims are subject to a heightened pleading standard requiring the complaint to allege with particularity the "who, what, where, and when of the allegedly false or fraudulent representation." Rodi v. S. New England Sch. Of L., 389 F.3d 5, 15 (1st Cir. 2004) (quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st

Cir.2004)). Here, Valley Eye has adequately pleaded the "when" of the misrepresentations by alleging that at least some of the misrepresentations were made before the contract was signed, D. 1-1 ¶¶ 9, 12. It does not allege the "who" except by referencing statements by ModMed and not specific individuals but incorporates by attachment the Boost proposal made by Jeremy Cagle, ModMed's Regional Sales Manager, during the Boost Proposal presentation at the Nashoba Valley Medical Office Building, the "when," id. at 15-21. Valley Eye has specified the "what" of the misrepresentation by alleging that during that presentation ModMed "specifically represented . . . that [it] had sufficient staffing and expertise to comply with all third-party payor requirements, and that [Valley Eye] could entrust 100% of [its] billings to ModMed for submission and collection." Id. ¶ 9.

Even assuming that the who/what/where/when of the alleged misrepresentations are met, ModMed argues that Valley Eye has not met Rule 9(b) requirements because the complaint does not allege adequate facts to support a reasonable inference that ModMed knew the statements it provided to Valley Eye were materially false or misleading. D. 9 at 9. "Rule 9(b) requires not only specifying the false statements and by whom they were made, but also identifying the basis for inferring scienter." N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). That is, the complaint must "set[ ] forth 'specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.'" Oliverio v. Allied Steel Buildings, Inc., No. 15-cv-13562-DJC, 2016 WL 1369331, at *3 (D. Mass. Apr. 6, 2016) (quoting Cardinale, 567 F.3d at 13).

Here, Valley Eye alleges that ModMed "knowingly misrepresented to Plaintiffs . . . in early 2022 [] that [it] had extensive resources and expertise to handle third party payor collections" and that ModMed made representations "to induce [Valley Eye] to enter into a contract with ModMed, and to induce [Valley Eye] to use ModMed as [its] sole collection agent." D. 1-1 ¶¶ 33-34. "Given

5

the heightened pleading requirement [of Rule 9(b)], however, the attenuated inferences required to link these [allegations] to [ModMed's] knowledge and intent cannot carry the day." Nguyen v. Ho, No. 24-cv-10588-ADB, 2024 WL 5187700, at *4 (D. Mass. Dec. 20, 2024). To the extent that Valley Eye is alleging that ModMed's subsequent non-performance of the contract may provide a factual basis for inferring scienter, D. 1-1 ¶ 35, such a claim is unavailing. See Com. v. True, 16 Mass. App. Ct. 709, 712 (1983) (holding that "deception cannot be inferred from the mere nonperformance of [a] promise") (alteration in original).

### 2. Alleged Misrepresentations Are Not Actionable

Even assuming *arguendo* that Valley Eye has satisfied Rule 9(b) as to Count I, the claim still fails since ModMed's alleged statements are non-actionable statements of opinion. As an important "threshold determination," "only statements of fact are actionable; statements of opinion cannot give rise to a deceit action." Cummings v. HPG Int'l, Inc., 244 F.3d 16, 21 (1st Cir. 2001). Generally, "a representation is one of opinion 'if it expresses only (a) the belief of the maker, without certainty, as to the existence of fact; or (b) his judgment as to quantity, value, authenticity, or other matters of judgment.'" Id. (quoting Restatement (Second) of Torts § 538A (1977)). "In contrast, statements that are susceptible of actual knowledge can give rise to a claim of deceit, if those statements are false." Id. at 22. This may include opinion statements "if it may reasonably be understood by the recipient as implying that there are facts to justify the opinion or at least that there are no facts that are incompatible with it." Id. (quoting McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 575 (1995)). Thus, in Cummings, the First Circuit held that the defendant's representation that the plaintiff's "roofs would last for twenty years" was a statement of fact because it "was specific and verifiable, not a mere expression of opinion or estimate." Id. At the same time, the court held that the defendant's statement touting "the supposed superiority of [its] product" was a non-actionable opinion. Id. at 21.

6

Here, ModMed allegedly represented to Valley Eye that it "had sufficient staffing and expertise to comply with all third-party payor requirements," including "sufficient knowledge of all timely filing requirements, extensive expertise in medical billing and sufficient knowledge of [Valley Eye's] medical practices to timely process and collect [its] accounts" and that "[Valley Eye] could entrust 100% of [its] billings to ModMed for submission and collections." D. 1-1 ¶¶ 9-10. None of these statements can reasonably be said to "relate to any specific, measurable property" of ModMed and as such qualify as non-actionable opinion statements or puffery. Valley Children's Hosp., 2023 WL 6065800, at *5 (and cases cited); see NPS, LLC, 706 F. Supp. 2d at 174 (D. Mass. 2010) (concluding that statements regarding company's "time-tested business model of stringent underwriting practices" was non-actionable where statements lacked "both specificity and tie to factual falsehoods").

In this way, ModMed's statements are similar to the representations in Valley Children Hosp., which the Court held to be non-actionable statements of opinion. Valley Children Hosp., 2023 WL 6065800, at *5-6. There, the plaintiffs sued the defendant, a billing and claims submission service, for, among other things, violating Chapter 93A by "misrepresenting its services such that [the plaintiffs] [were] induced to enter" the contract. Id. at *3. The Court concluded that the defendant's promises of "'[s]ignificantly improved financial and operational performance' and 'dramatically improved control over practice operations' are non-actionable puffery" because they at most "offer a hypothetical, but non-objective view of what [the plaintiff] might achieve by using" the defendant's product. Id. at *5 (alteration in original) (citations omitted). The Court then noted that while the defendant's other representation, namely its promise that the plaintiff "could 'get paid more faster,' '[d]ecrease the rate of lost and denied claims,' and obtain 'faster payment, increased revenues,'" appear objectively measurable, they are non-actionable because they only express the defendant's opinion about future events rather than

7

existing facts. Id. at *6. Here, likewise, the alleged representations addressed staffing capacity and expertise to address Valley Eye's future billing needs. D. 1-1 ¶¶ 9-10 (emphasis added). As such, they fall under the category of non-actionable opinion statements or puffery. See In re Bos. Sci. Corp. Sec. Litig., No. 10-cv-10593-DPW, 2011 WL 4381889, at *11 (D. Mass. Sept. 19, 2011) (holding that the defendant's representations that its sales force was "stable, large, experienced" and "very successful" were non-actionably puffery), aff'd, 686 F.3d 21 (1st Cir. 2012).[1]

For the aforementioned reasons, the Court allows the motion to dismiss as to Count I.

### B.   Count II:  Breach of Fiduciary Duty

"A plaintiff claiming breach of fiduciary duty must [allege plausibly] the following: '1) existence of a fiduciary duty arising from a relationship between the parties, 2) breach of that duty, 3) damages and 4) a causal relationship between the breach and the damages.'" Adley v. Burns, No. 16-cv-12265-WGY, 2018 WL 2215512, at *4 (D. Mass. May 15, 2018) (quoting Qestec, Inc. v. Krummenacker, 367 F. Supp. 2d 89, 97 (D. Mass. 2005)).

"Fiduciary relationships are defined by one party's 'trust and confidence . . . in the integrity and fidelity of another.'" In re LastPass Data Sec. Incident Litig., 742 F. Supp. 3d 109, 128 (D. Mass. 2024) (quoting Est. of Moulton v. Puopolo, 467 Mass. 478, 492 (2014)). "They may arise either 'as a matter of law, where parties to the subject relationship are cast in [certain] archetypal roles,' or 'as determined by the facts established upon evidence indicating that one person is in fact dependent on another's judgment in business affairs or property matters.'" Id. (alteration in original) (quoting UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 406 (2019)). "Fiduciary relationships normally do not arise from 'business transactions conducted at arm's length,' but

---

[1] Given the Court's conclusion on these grounds as to Count I, the Court needs not reach ModMed's reasonable reliance challenge to this claim. D. 9 at 8.

8

may where 'one party reposes its confidence [and trust] in another.'" Id. (quoting Indus. Ge. Corp. v. Sequoia Pac. Sys. Corp., 44 F.3d 40, 44 (1st Cir. 1995)).

Here, Valley Eye claims that a fiduciary relationship existed because ModMed, under the Boost Agreement, assumed exclusive control over Valley Eye's billing operations at a time when Valley Eye lacked the internal capacity to do so and was in dire need of billing support. D. 15 at 9-10. These circumstances, Valley Eye argues, gave ModMed significant control and heightened its dependence and reliance on ModMed which purportedly "support[s] the imposition of a fiduciary duty." Id. at 10. Even as alleged, however, these alleged facts are insufficient to create a fiduciary relationship. See LastPass, 742 F. Supp. 3d at 128 (citing Geo. Knight & Co. v. Watson Wyatt & Co., 170 F.3d 210, 216 (1st Cir. 1999)) (concluding that the plaintiffs' reliance on the defendant company for its expertise and the accompanying "disparity of knowledge" was insufficient to form a fiduciary relationship); UBS Fin. Servs., Inc., 483 Mass. at 408-09 (noting that power imbalance alone "does not, in and of itself, create a fiduciary duty"). UBS Fin. Servs., Inc. is illustrative. There, the plaintiff who was a beneficiary of an IRA account holder with the defendant bank alleged that the defendant had breached its fiduciary duty to her. UBS Fin. Servs., Inc., 483 Mass. at 405. The court acknowledged that the plaintiff "had to rely on [the defendant]'s cooperation in order to realize her ownership interest in the IRAs." Id. at 408. Nonetheless, the court noted that such a disparity where the defendant could "unilaterally dicta[te] the terms upon which" the plaintiff could access the IRAs "does not, in and of itself, create a fiduciary duty." Id. at 408-09. Indeed, the court noted that "this functional absence of choice did not yield a relationship of 'higher' trust" typical in a fiduciary relationship. Id. at 408.

Like the UBS Fin. Servs., Inc. plaintiff, Valley Eye has grounded their breach of fiduciary duty claim on the premise that its heightened reliance on ModMed's services justify the imposition of a fiduciary duty. And as in that case, Valley Eye cannot allege plausibly the existence of a

9

fiduciary relationship with ModMed based on the allegations here.  Accordingly, Valley Eye has failed to state a claim for breach of fiduciary duty and the Court allows the motion to dismiss as to Count II.

### C. Count III: Chapter 93A

"'Chapter 93A is a broad . . . consumer protection statute,' under which '[a] plaintiff seeking relief . . . must [allege plausibly] that the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce.'"  Tomasella v. Nestle USA, Inc., 962 F.3d 60, 70 (1st Cir. 2020) (alterations in original) (quoting Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016)).  To prevail, "a plaintiff must [allege plausibly] that the defendant[] committed an unfair or deceptive trade practice, and that the plaintiff suffered a loss of money or property as a result." Barnia v. Kaur, 646 F. Supp. 3d 154, 173 (D. Mass. 2022).

Valley Eye alleges that ModMed engaged in unfair and deceptive practices by (1) "[m]isrepresenting that [it] has sufficient expertise and personnel to collect" Valley Eye's billings, (2) "forcing [Valley Eye] to accept that ModMed was to be the sole billing agent for at least a year," (3) "violating ModMed's fiduciary duties to properly collect [Valley Eye's] billing" and (4) "[c]ausing [Valley Eye] to continue to use ModMed, notwithstanding massive failures . . . by enforcing the minimum fees provisions and the minimum term provisions in the parties contract." D. 1-1 ¶ 45.  In other words, Valley Eye alleges that ModMed violated Chapter 93A through fraudulent misrepresentations during contract negotiations, breach of fiduciary duty and inadequate performance of the Boost Contract.

As to the first category, fraudulent misrepresentation claims "often can form the basis for a Chapter 93A claim."  Rodi, 389 F.3d at 20 (citations omitted).  As with other fraud claims, however, a Chapter 93A claim "sounding in fraud must satisfy the heightened pleading requirement" of Rule 9(b).  Rick v. Profit Mgmt. Assocs., Inc., 241 F. Supp. 3d 215, 225 (D. Mass.

10

2017).  As discussed, Valley Eye has failed to satisfy the Rule 9(b) particularity requirement for its misrepresentation claim because they have not alleged facts that can permit an inference of scienter.  Accordingly, Valley Eye cannot now rely on the same basis to assert a Chapter 93A claim.  Rick, 241 F. Supp. 3d at 225.

Similarly, to the extent that Valley Eye could, or does, relies upon ModMed's alleged breach of fiduciary duty as the basis for its Chapter 93A claim, that basis for Chapter 93A liability fails where, as discussed above, that underlying claim has not been plausibly pled and Valley Eye has not shown how ModMed's alleged breach of fiduciary amounts to unfair or deceptive trade practices.  Barnia, 646 F. Supp. 3d at 173.

Valley Eye likewise cannot support its Chapter 93A claim by alleging that ModMed had failed to adequately perform its contractual obligations.  "[M]ere breach of a contract, without more, does not amount of a [Chapter] 93A violation."  Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 762 (1989).  Nevertheless, "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for [Chapter] 93A purposes."  Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474-75 (1991) (quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986)).  Typically, this may occurs where an "intentional breach is meant to gain, without paying for it, the ongoing benefit of a party's earlier performance" or "to force a concession from the other party to which the first party is not entitled."  Feijo v. Toyota, 2000 Mass. App. Div. 332, 2000 WL 1880266, at *2 (Mass. App. Div. Dec. 20, 2000) (citations omitted); see Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55-56 (1st Cir. 1998) (concluding that failure to pay for completed and ongoing work constituted Chapter 93A violation where company's "purpose was to extract a favorable settlement . . . for less than [defendant] knew it owed by repeatedly promising to pay, not do so, stringing out the process"); Mass. Emps. Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39,

11

43 (1995) (explaining that Chapter 93A is violated where "conduct undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect").

Here, Valley Eye has failed to plead plausibly a Chapter 93A violation on this basis since it allegations amount to a claim that ModMed failed to meet its contractual obligations, D. 1-1 ¶¶ 27, 29, and without providing any additional factual allegations permitting the inference that this purported failure to perform was intended to extract concessions or other un-bargained for benefits. See Valley Children Hosp., 2023 WL 6065800, at *3 (holding that mere allegations of breach of contract, without any indication that the defendant had used the alleged poor performance to extract additional benefits, cannot support a Chapter 93A claim).

For all of these reasons, the Court allows the motion to dismiss as to Count III on this ground.

### D. Count IV:  Interference With Advantageous Relationship

Valley Eye alleges that ModMed interfered with its business relationship with its patients by sending them invoices containing "demands for payments of a large bill for services that should have been collected by ModMed from the insurer," which allegedly drove Valley Eye's patients from the practice. D. 1-1 ¶ 31.  To state such a claim, a plaintiff must allege plausibly "(1) [he or she] had a contract or advantageous business relationship with a third party, (2) the defendant knowingly induced the third party to break the contract or to forgo the business relations, (3) the defendant's interference was improper in motive or means, and (4) the plaintiff was harmed by the interference." Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 54 (2020).

ModMed first argues that that Valley Eye has failed to state a claim for Count IV because the complaint does not contain factual allegations permitting the inference that Valley Eye's patients had left the practice because of ModMed's mishandling of the billing service. D. 9 at 14. Viewed in light most favorable to Valley Eye, however, it is not implausible to infer, as Valley Eye

alleges, that ModMed's repeated mishandling of the billing services and sending of erroneous invoices would frustrate many of its patients and that would eventually cause result in patients leaving the practice.

ModMed next contends that the claim fails because Valley Eye has not alleged plausibly that ModMed "knowingly induced" its patients to leave the practice. D. 9 at 14. A defendant "knowingly induces" a third party to "break the contract or to forgo business relations" with the plaintiff, Kelleher, 98 Mass. App. Ct. at 54, when it actively engages the third party to do so with full awareness that the same is "practically certain to follow," Counterman v. Colorado, 600 U.S. 66, 79 (2023) (citing United States v. Bailey, 444 U.S. 394, 404 (1980)); see Hamann v. Carpenter, 937 F.3d 86, 91-92 (1st Cir. 2019) (holding that the plaintiff has stated a plausible claim that the defendant interfered with his business relationship with a third party because the defendant had actively pressured the third party to break his contract with the plaintiff). Here, as alleged, ModMed's mishandling of Valley Eye's billing services resulted in negative impact on its business. D. 1-1 ¶ 31. That Valley Eye has suffered such consequences because of ModMed's alleged mishandling of its work, however, does not suggest that ModMed had actively engaged with its patients to induce them to forgo their relationship with Valley Eye. Thus, the allegations presented in this complaint, without more, are insufficient to support the contention that ModMed knowingly induced the patients to leave Valley's practice or forgo the business relations.

This claim also fails because Valley Eye has not alleged plausibly that the interference was motivated by improper motive or achieved by improper means. D. 9 at 14. The "improper motive or malevolence required is 'actual malice.'" King v. Driscoll, 418 Mass. 576, 587 (1994) (quoting Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993)). As to this element, "the improper conduct must extend 'beyond the interference itself.'" inVentiv Health Consulting, Inc. v. Equitas Life Scis., 289 F. Supp. 3d 272, 283 (D. Mass. 2017) (internal citation omitted). "Violation of 'a statute

13

or a rule of common law' or use of threats, misrepresentations of facts or 'other improper means' provides a sufficient improper motive or means." Id. Importantly, "negligent (even grossly negligent) conduct . . . is insufficient to meet the 'improper means' element; rather, the plaintiff is required to show conduct amount to deceit or dishonesty." Cutting Edge Homes, Inc. v. Mayer, 103 Mass. App. Ct. 749, 750 (2024).

Here, the complaint contains no allegations that can support a plausible inference that ModMed sent the erroneous bills to Plaintiffs' patients out of actual malice. Valley Eye also has not alleged plausibly that ModMed had engaged in any improper conduct or means beyond the alleged interference itself as the allegations do not support a reasonable inference that ModMed's mishandling of billing qualifies as a violation of the law, nor is there any element of misrepresentation, deceit or dishonesty involved. inVentiv Health Consulting, Inc., 289 F. Supp. 3d at 283; Cutting Edge Homes, Inc., 103 Mass. App. Ct. at 750. Indeed, Valley Eye specifically alleges that ModMed was negligent, D. 1-1 ¶ 25, which, as discussed, is insufficient to support an inference of improper means for the purposes of this claim. Cutting Edge Homes, Inc., 103 Mass. App. Ct. at 750. For these reasons, the Court allows the motion to dismiss as to Count IV.

E.   **Count V:  Negligence**

"To prevail on a negligence claim, a plaintiff must [allege plausibly] that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Jupin v. Kask, 447 Mass. 141, 146 (2006) (citation omitted). As an initial matter, Valley Eye did not address ModMed's arguments as to this claim in its opposition and thus waives opposition to same. See Bean v. NICE Sys., Inc., No. 23-cv-12394-BEM, 2025 WL 1248899, at *5 n.2 (D. Mass. Apr. 30, 2025) (concluding that because the plaintiff failed to address the defendants' summary judgment arguments as to one of the claims in the complaint, the plaintiff has waived

14

opposition to same). In the interest of completeness, however, the Court turns to the merits of ModMed's challenge to this claim. ModMed argues that Valley Eye's negligence claim is barred by the economic loss doctrine. D. 9 at 15. "[T]he economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries that they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss." Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass. 458, 469 (2009). Thus, there is no recovery where the only alleged harm is "lost profits" or "harm to business reputation." Logan Equip. Corp. v. Simon Aerials, Inc., 736 F. Supp. 1188, 1198 (D. Mass. 1990).[2] Here, the complaint alleges that ModMed's negligent performance of Valley Eye's medical billing services caused it to lose "millions of dollars in lost billings and billings that were not properly submitted" to insurers and third-party payors. D. 1-1 ¶ 25. The complaint also alleges that ModMed's negligence caused it to lose patients who were frustrated with ModMed's billing mistakes. Id. ¶ 31. Given that Valley Eye has only alleged economic harms, their negligence claim is barred by the economic loss doctrine. Accordingly, the Court allows the motion to dismiss as to Count V.

---

[2] Consideration of other rulings on the economic loss rule do not dictate a different outcome here. Other sessions of this Court have held that negligence claims based on negligent performance of a contract are not barred by the economic loss doctrine. See Johansen v. Liberty Mut. Grp., Inc., No. 15-cv-12920-ADB, 2016 WL 7173753, at *10-11 (D. Mass. Dec. 8, 2016); see Brown v. Quest Diagnostics, LLC, No. 08-cv-11517-RGS, 2008 WL 5236033, at *3-4 (D. Mass. Dec. 16, 2008). Both holdings relied, in whole or in part, upon Abrams v. Factory Mutual Liability Ins. Co., 298 Mass. 141, 144 (1937). It is not clear, however, that Abrams, which predated the adoption of the economic loss doctrine, creates an exception to same for a negligent performance of a contract claim. JFF Cecilia LLC v. Weiner Ventures, LLC, No. 1984CV03317-BLS2, 2020 WL 4464584, at *16 (Mass. Super. July 30, 2020) (discussing Johansen, Brown and Abrams). More significantly, one of these cases recognized that "[e]ven where there is a valid negligence claim between contracting parties," it is "measured by the terms of the contract." Johansen, 2016 WL 7173753, at *11, That is, "if the contract limits damages for a breach of contract, this same limitation restricts what can be recovered based on a claim of negligence." Id. Here, Valley Eye has not even alleged a breach of contract claim, likely because, as ModMed points out, the agreement contains a limitation of liability provision. D. 9 at 1-2; D. 1-1 at 49-50.

### F.      Count VI:  Request for Declaratory Judgment

"Pursuant to the Declaratory Judgment Act, a federal district court may, '[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" Transpac Marine, LLC v. Yachtinsure Servs., Inc., 655 F. Supp. 3d 18, 28 (D. Mass. 2023) (alteration in original) (quoting 28 U.S.C. § 2201(a)).  "[A] district court has 'complete discretion in determining whether and when to entertain'" a claim for declaratory judgment.  Id. (internal quotation marks omitted) (quoting Zurich Am. Ins. V. Watts Regul. Co., 796 F. Supp. 2d 240, 246 (D. Mass. 2011)).  Courts in this Circuit have generally exercised this discretion where the declaratory judgment claim is duplicative of other claims in the complaint.  See Martorana v. Progressive Direct Ins. Co., No. 22-cv-10613-DJC, 2023 WL 2465639, at *9 (D. Mass. Mar. 10, 2023) (citations omitted) (collecting cases from other sessions of the Court that denied claims requesting declaratory judgment for being duplicative of substantive claims in the complaint). Here, Valley Eye requests that the Court declares the Boost Contract null and void for failure of consideration because ModMed had induced it to enter into same by fraud.  D. 1-1 ¶ 57; D. 15 at 13.  Because the legal and factual bases for Valley Eye's claim here is identical to their substantive fraud in the inducement claim in Count I, the declaratory judgment claim is duplicative of same. Accordingly, the Court allows the motion to dismiss as to Count VI on this ground.

### VI.    Conclusion

For the reasons stated above, the Court ALLOWS the motion to dismiss.  D. 8.

**So Ordered.**

                                                                /s Denise J. Casper
                                                                United States District Judge

16